1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MUFFIN ANDERSON, | Case No. C18-73-RSM |
| Plaintiff, | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JPMORGAN CHASE & CO., *et al.*, | |
| Defendants. | |

16      This matter comes before the Court on Defendant Select Portfolio Servicing, Inc.

17  ("SPS")'s Motion for Summary Judgment and dismissal of Plaintiff Muffin Anderson's claims.

18  Dkt. #26.  Ms. Anderson opposes.  Dkt. #29.  For the reasons stated below, the Court GRANTS

19
20  IN PART and DENIES IN PART this Motion.

21                          **I.      BACKGROUND**

22      In 1988, Plaintiff Muffin Anderson became the owner of the property at 3503 South

23  Hudson Street in Seattle.  Dkt. #32 (Anderson Decl.) at ¶ 2.  In February of 2007, Ms. Anderson

24
25  executed a promissory note with Chase Bank for $328,000.  Dkt. #27-1. The Note was secured

26  by a deed of trust for the real property at the above address.  Dkt. #27-2.  Starting in 2012, Ms.

27  Anderson began applying for a loan modification with Chase.  Anderson Decl. at ¶ 3.  In April

28  of 2013, Ms. Anderson received a letter from Chase stating she was approved for a trial-loan

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 1

modification plan under the Home Affordable Modification Program ("HAMP"), provided that she made three trial payments of $688.33 for June, July, and August 2013.  Dkt. #19 at 67.  The letter states "[t]o accept this offer, you must make your first monthly trial period payment in place of your normal monthly mortgage payment" and "[a]fter all trial period payments are timely made and you continue to meet all program eligibility requirements, your mortgage would then be permanently modified."  *Id*.  However, the next sentence is "[y]ou will be required to execute a permanent modification agreement that we will send you before your modification becomes effective."  *Id*.  An FAQ attached to the letter indicates both that changes to the permanent modification "should not significantly change the amount of your modified mortgage payment" and that the interest rate may increase by 1% per year up a cap based on the market rate on the day the modification agreement is prepared.  *Id.* at 68–69.

Ms. Anderson contends she spoke with a Chase representative shortly after receiving this letter named Tannette McCray who told her that the modification was approved and that the letter "was a written contract."  Anderson Decl. at ¶ 6.

In a letter dated May 17, 2013, Chase informed Anderson it was transferring loan servicing to Select Portfolio Servicing, Inc. and said to make payments and inquiries to it.  Dkt. #19 at 76.

SPS took over from Chase as the servicer of Ms. Anderson's loan effective June 1, 2013.  Dkt. #27 (Benight Decl.), ¶ 4.[1]  After her loan was transferred, there is no dispute that Ms. Anderson complied with the trial payment plan and timely made her trial payments, then continued to send that same reduced amount to SPS every month for years.

---

[1] SPS now acts on behalf of Deutsche Bank National Trust Company, as Trustee, under a limited power of attorney.  Dkt. #27-3.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

SPS contends it sent Ms. Anderson a "final" Home Affordable Modification Program ("HAMP") agreement in January 2014. *See* Dkt. #27-4. However, Ms. Anderson states she never received this document. *See* Anderson Decl. at ¶ 14. The accompanying letter appears to reference the fact that there was a prior trial period plan by stating "[p]lease find enclosed a copy of your final modification document," but then ignores Ms. Anderson's prior trial payments by stating "[a]lthough you have not yet paid all of the required trial payments, we have sent you the modification document so that you can expedite the process by signing and returning them to us now." Dkt. #27-4 at 1. She never signed the agreement.

There appears to be a genuine dispute between the parties as to their communications in 2014. Ms. Anderson says in her declaration that she believed she had a permanent loan modification after making the trial payments, that she "heard nothing to the contrary from SPS or Chase," and that SPS "never told me that there were any problems with my application." *Id.* at ¶¶ 8 and 11. However, she goes on to state that she was communicating with SPS "for months" to "insist that they honor the modification." *Id.* at ¶¶ 12–13. These statements appear incongruous. Ms. Anderson states specifically that she had a call with an SPS representative in 2014 who said SPS would "think about" whether to honor the modification Chase had offered and said that SPS could give her a "new loan but there would be a balloon payment several years into the loan." *Id.* at ¶ 12.

Turning to the substance of the SPS "final" agreement sent in January of 2014, it set monthly payments at $689.99, $1.66 more than the original trial payment plan from Chase, but only for the first 5 years. Dkt. #27-4 at 8. After that, the monthly payments would increase annually, eventually increasing to roughly $200 more per month than the original amount

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

suggested by Chase's original letter, with increasing interest rates and a final balloon payment of $111,956.49 due on the maturity date. *See* Dkt. #27-4.

SPS contends they sent another letter in April of 2014 asking her to return the signed final agreement. Dkt. #27-5. Ms. Anderson denies receiving this letter. Anderson Decl. at ¶ 14. SPS sent Ms. Anderson a letter on July 30, 2014, stating she was denied a HAMP modification due to her failure to return the signed agreement. Dkt. #27-6. SPS contends she was then required to make her regular, pre-modification payments of $1,652.03. Benight Decl. at ¶ 8. However Ms. Anderson continued to make payments of only $688.33. *Id.* SPS sent monthly statements and default letters to Ms. Anderson through 2014-2016, indicating that she must pay the required $1,652.03, and that she was in default for failing to do so. *Id.*; Dkts. #27-7; #27-8.

On February 10, 2016, SPS sent Ms. Anderson a letter offering a new trial period plan under HAMP, apparently based on an incomplete application from Ms. Anderson. Dkt. #27-9. This letter said "Congratulations!" but required trial period payments of $1,379.88 per month—double the trial payments offered by Chase. As far as the Court can gather, Ms. Anderson ignored this offer and kept sending in her $688.33 per month, leading SPS to deny this second HAMP modification. Benight Decl. at ¶9.

SPS sent Ms. Anderson a notice of default on October 10, 2016, warning her that she had until November 9, 2016, before SPS would begin to "pursue remedies under the Security Instrument." *Id*. ¶10; Dkt. #27-10. Ms. Anderson did not pay any additional amount, and thus SPS proceeded with foreclosure. *Id*. Consistent with SPS policy, Ms. Anderson's partial payment of $688.33 in December 2016 was returned along with a letter from SPS explaining that "it was less than the amount necessary to halt foreclosure proceedings." *Id*. at ¶11; Dkt.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

#27-11. SPS's December letter states that she must now pay $51,966.91 in order to halt foreclosure. *Id.*

Ms. Anderson filed her original Complaint in King County Superior Court on December 28, 2017. Dkt. #1-1 (Complaint) at 12. The case was removed to this Court, and Ms. Anderson filed a First Amended Complaint on March 12, 2018. Dkt. #17. Defendant Chase was later dismissed from the case. Dkt. #24. Defendant SPS now moves for summary judgment on all of Ms. Anderson's claims. The First Amended Complaint lists causes of action against SPS under the Fair Debt Collection Practices Act ("FDCPA"), Washington's Consumer Protection Act ("CPA"), the Mortgage Broker Practices Act ("MBPA"), the Deeds of Trust Act ("DTA"), Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Fraud. Dkt. #17.

## II.     DISCUSSION

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S.*

*Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Contract and Duty of Good Faith and Fair Dealing Claims**

Washington law controls these claims. To establish a breach-of-contract claim, Plaintiff must prove: (1) the existence of a contract, (2) a material breach of that contract, and (3) resulting damage. *St. John Med. Ctr. v. State ex rel. Dep't of Soc. & Health Servs.*, 110 Wn. App. 51, 64 (2002). Whether a contract has been formed and/or breached "may be determined as a matter of law if reasonable minds could not differ." *See P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 207 (2012). "There is in every contract an implied duty of good faith and fair dealing," which "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). "[T]he duty arises only in connection with terms agreed to by the parties." *Id.*

The Court agrees with SPS that Chase's TPP letter was not itself an offer for a permanent loan modification. Instead, it appears to have been a contract where Ms. Anderson agreed to make trial payments and Chase (and thus SPS who took over the loan servicing) agreed to offer a subsequent final loan modification which would fit within certain parameters. Reasonable minds could differ on whether this contract was formed and/or breached.

The Court has identified multiple genuine disputes as to material facts that preclude summary judgment on these claims. The parties disagree about whether or not key documents at issue in this case were sent to Ms. Anderson, whether the terms of the permanent loan were

significantly different than what was originally promised to Ms. Anderson by Chase, and whether an SPS employee told her as much over the phone. These facts are material to these claims. While SPS finds it impossible to believe that Ms. Anderson did not receive its final HAMP agreement, that possibility is consistent with the surrounding facts, and a reasonable juror could find for Ms. Anderson based on her testimony.

## C. Statutory Claims

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation" or "unfair" practice "to collect a debt." 15 U.S.C. § 1692e; 15 U.S.C. § 1692f. FDCPA claims are subject to a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). While the discovery rule applies to FDCPA claims, the statute begins to run whenever the plaintiff "first knew (or should have known)" of the factual basis for her claims. *Lyons v. Michael & Assocs.*, 824 F.3d 1169, 1171-72 (9th Cir. 2016). The Court finds that, taking the facts in the light most favorable to Ms. Anderson, she could not have discovered the basis for her claim as of July 30, 2014, when SPS sent her notice that she was officially denied a HAMP modification, because of her continued unclear communications with SPS and SPS's continued apparent acceptance of Ms. Anderson's payments. On summary judgment the Court cannot conclude that Ms. Anderson knew or should have known of the factual basis for her FDCPA claim until December 15, 2016, when SPS sent her a letter threatening foreclosure. Her allegations about SPS's lack of communication and the record of letters going back and forth create a question of fact as to whether SPS engaged in false, deceptive, or misleading representation. This claim will not be dismissed.

A claim under the CPA requires proof of the following elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest,

(4) causing injury to a person's business or property, and (5) causation. *Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009). As to the third element of a CPA claim, Ms. Anderson cannot show the required connection between this private dispute over one failed loan modification and the public interest. "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 790 (1986). This dispute strikes the Court as an unusual situation arising between two parties, and Ms. Anderson has presented no evidence that other borrowers were wrongly denied HAMP modification in the same way as alleged here. Accordingly this claim is properly dismissed. *See Celotex, supra.*

The MBPA applies to "loan originators" and "mortgage brokers" and regulates broad categories of conduct, including generally prohibiting fraud and unfair/deceptive practices. *See* RCW 19.146.0201(1)-(3). Ms. Anderson's claim under the MBPA is properly dismissed as SPS was not operating as a loan originator or mortgage broker as defined under that statute and applicable WACs. *See* WAC 208-660-105. Here, SPS only engaged in servicing a borrower's existing residential mortgage loan.

Ms. Anderson's DTA claim is properly dismissed as there has not yet been a completed foreclosure sale. *See Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 429 (2014)).

### D. Fraud Claim

Ms. Anderson's fraud claim is governed by a three-year statute of limitation. RCW 4.16.080(4). "In order to prove fraud, the plaintiff must establish each of the following elements by clear, cogent, and convincing evidence: (1) A representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person to whom it is made, (6) ignorance of its

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) his right to rely upon it, (9) his consequent damage." *Kirkham v. Smith*, 106 Wn. App. 177, 183 (2001).

This claim is arguably timely for the same reasons explained above with regard to her FDCPA claim. The Court further finds that that the above questions of fact, identified with regard to her contract claims, are material to multiple elements of this claim, and preclude summary judgment. The Court agrees with Ms. Anderson that the record is otherwise sufficient to satisfy the above elements of fraud at the summary judgment stage. *See* Dkt. #31 at 19–20.

### E. Requested Relief of Permanent Modification

The Court notes that SPS asks the Court to deny Ms. Anderson's requested relief of a Court-ordered new modification agreement. Dkt. #26 at 23. The Court will defer ruling on the issue of remedies at this time.

### III.    CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant SPS's Motion for Summary Judgment (Dkt. #26) is GRANTED IN PART and DENIED IN PART as stated above.

2) Ms. Anderson's claims brought under the CPA, MBPA, and DTA (second, third, and fourth causes of action) are dismissed.

DATED this 4 day of December, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9